<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SWIFT,<br><br>    Plaintiff,<br><br>v.<br><br>RAMESH PANDEY, et al.,<br><br>    Defendants. | Civil Action No. 13-650 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants Ramesh Pandey ("Ramesh"), Bhuwan Pandey ("Bhuwan"), and Abhilasha Pandey ("Abhilasha") (collectively "Defendants")' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [CM/ECF No. 20.] The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion to dismiss is granted. Counts Five, Ten, and Fifteen are dismissed *with* prejudice. All remaining counts–Counts One, Two, Three, Four, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen–are dismissed *without* prejudice. Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies in Counts One, Two, Three, Four, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen **on or before December 13, 2013**.[1]

---

[1] Plaintiff may <u>not</u> add any additional causes of action without adhering to Federal Rule of Civil Procedure 15(a).

# I.   BACKGROUND[2]

Plaintiff's Amended Complaint was filed on August 5, 2013. According to the Amended Complaint, Plaintiff, Robert Swift, at an unspecified time, purchased all the right, title, and interest to all assets of Xechem International, Inc. and Xechem, Inc. (collectively "Xechem") at Chapter 7 auction in Bankruptcy Court. (Amend. Compl. ¶ 4.) These assets included any and all right, title, and interest to Xechem Pvt. Limited ("Xechem India") and Xechem Pharmaceuticals Nigeria, Ltd. (*Id.*) This action stems from the alleged wrongful conduct of the Defendants in connection with Xechem and Xechem India.

Xechem India is based out of New Delhi, India and is a "family business" owned and operated by Ramesh and Bhuwan. (*Id.* at ¶¶ 18, 21.) Ramesh was the Chief Executive Officer and Treasurer of Xechem from 1994 through July 5, 2007. (*Id.* at ¶¶ 31, 51.) Ramesh is also the Chief Executive Officer and a director of Xechem India. (*Id.* at ¶ 11.). Bhuwan is Ramesh's brother and was an officer of Xechem from 2002 until May 29, 2007. (*Id.* at ¶¶ 12, 31.) He is also General Manager and a director of Xechem India, in which he originally had a 25-percent ownership interest. (*Id.* at ¶ 13.) In 1998, Ramesh transferred nearly all of his shares in Xechem India to Bhuwan, who, as of August 2007, owned nearly 100 percent of its stock. (*Id.* at ¶ 13.) Abhilasha, Bhuwan's daughter, was the "Sarbanes-Oxley Compliance Manager for Xechem from June 2006 to July 2007, and worked for Xechem India since at least January 2000." (*Id.* at ¶ 17.)

Plaintiff joined Xechem's board of directors in May 2007 as the representative of the interest of convertible bondholders he had brought to the company. (*Id.* at ¶¶ 37-40.) Over $2 million of the money raised through the convertible bond offering was from Plaintiff's friends and family. (*Id.* at ¶ 38.)

---

[2] The Court accepts the following facts asserted in Plaintiff's Complaint as true solely for purposes of this motion.

At a May 29, 2007 meeting of Xechem's board of directors, the Board discovered that Ramesh had spent nearly $4.3 million of the convertible bond offering in violation of the agreement with the bondholders. (*Id.* at ¶ 41.) The board then demanded an accounting of all money lent to Xechem India by Xechem. (*Id.* at ¶ 42.) Ramesh told the board that $700,000 had been lent from Xechem from Xechem India and represented to the board that Xechem India was a subsidiary of Xechem. (*Id.* at ¶ 43.) The board subsequently withdrew Ramesh's authority to advance or spend more than $5,000 of Xechem's money without board approval. (*Id.* at ¶ 49.) Ramesh violated this directive by writing checks totaling $605,639.87 made out to his friends and family. (*Id.* at ¶ 50.) Ramesh was subsequently removed from his position as Chief Executive Officer, President, and Treasurer of Xechem on July 5, 2007. (*Id.* at ¶ 51.) On November 10, 2008, Xechem filed for Chapter 11 bankruptcy. (*Id.* at ¶ 52.)

Although the Amended Complaint is not clear on this point, Plaintiff's allegations apparently stem from loans from Xechem to Xechem India totaling $1,083,682 (the "loan"). (*See, e.g., id.* at ¶¶ 43, 45, 60(e), 64, 73, 76, 85, 106, 122(e), 128, 134.) Xechem India has not repaid the principal or interest on this loan to Xechem, which, at this point, is over $2 million. (*Id.* at ¶¶ 55, 134.)

Plaintiff claims that all of the Defendants concealed and/or failed to disclose that Xechem India was owned by Ramesh and Bhuwan, contrary to representations that Ramesh had previously made to Xechem's board of directors and the "investing public" that Xechem India was a "subsidiary" of Xechem. (*See id.* at ¶¶ 43-44, 60(a)-(c), 90-91, 97(a)-(c), 122(a)-(c).) Plaintiff alleges that Xechem's Board of Directors believed that the company owned two-thirds of Xechem India, and this belief was based on statements in "SEC filing[s]." (*Id.* ¶ 91.) Plaintiff claims that Xechem's board would not have authorized the loan "if it had known that [Xechem

India] was not a Company subsidiary and that Bhuwan owned 99.8% of Xechem India." (*Id.* at ¶ 54.)

Plaintiff asserts that, through Xechem India, Ramesh and Bhuwan, assisted by Abhilasha, used the proceeds of the loan to: (1) lease office space in India from Ramesh; (2) pay money to relatives of Ramesh and Bhuwan in India; (3) pay the Defendants' "personal expenses"; (d) buy "assets in India"; (4) acquire a leasehold interest in certain land in India; and (5) purchase a "spray dryer" machine. (*See id.* at ¶¶ 46-48, 80, 86, 110, 115-116, 127.) In addition, Plaintiff alleges that Defendants concealed these assets from Xechem's board. (*Id.* at ¶ 44.)

In light of the foregoing, Plaintiff's Amended Complaint asserts fifteen causes of action that fall into the following nine categories: **(1)** breach of fiduciary duty as against Ramesh, Bhuwan, and Abhilasha; **(2)** breach of duty of loyalty as against Ramesh, Bhuwan, and Abhilasha; **(3)** ultra vires act as against all Defendants; **(4)** unjust enrichment as against Ramesh and Bhuwan; **(5)** disgorgement of unlawful profits as against Ramesh and Bhuwan; **(6)** civil conspiracy as against all Defendants; **(7)** breach of contract as against Xechem India; **(8)** alter ego as against Ramesh and Bhuwan; and **(9)** fraudulent concealment as against all Defendants. Defendants now move to dismiss all claims asserted in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    **LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

## III.   **DISCUSSION**

Before turning to Defendants' arguments, the Court notes that Plaintiff has agreed to withdraw Count Six (fraudulent concealment as against all Defendants). Thus, Count Six in the Amended Complaint is hereby deemed withdrawn and shall be stricken from the Amended Complaint (or any future iterations of same).

The Court also notes some deficiencies in Plaintiff's opposition brief. First, Plaintiff's brief fails to contain a table of contents or a table of authorities, both of which are required by Local Civil Rule 7.2(b).

Second, Plaintiff's opposition brief contains a recitation of the relevant facts, with no citations to the Amended Complaint. In determining the sufficiency of a complaint, the Court must, *inter alia*, accept all well-pleaded factual allegations contained in the complaint as true and then determine whether said allegations contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Phillips*, 515 F.3d at 234; *Iqbal*, 556 U.S. at 678. Moreover, a complaint cannot be amended (or supplemented) by way of an opposition brief. *See Pennsylvania ex rel v. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). It appears to the Court that Plaintiff's opposition brief contains facts that are not

expressly set forth in the Amended Complaint. Because the factual background section of Plaintiff's opposition brief contains no citation to the Amended Complaint, the Court has no way of knowing for sure whether each and every factual allegation contained therein is also present in the Amended Complaint, and, if so, where. The Court has done its best to assess the instant motion to dismiss based on the facts pled in the Amended Complaint.

Finally, the Court notes that Plaintiff's opposition brief is practically devoid of any citations to legal authority. While the Court is mindful of Plaintiff's *pro se* status, it is not the Court's responsibility to engage in its own legal research in order to find legal authority to support Plaintiff's arguments—nor would it be proper for the Court to do so. Again, the Court has done its best, under the circumstances, to assess Defendants' legal arguments, along with the arguments raised by Plaintiff in opposition, despite Plaintiff's failure to cite to any legal authority in support of same.

Plaintiff shall take note of the foregoing deficiencies in his submission and shall be guided accordingly, in any filings with this Court.

a. <u>Timeliness of Plaintiff's Unjust Enrichment, Breach of Fiduciary Duty, and Conspiracy Claims</u>

Generally, a "[statute of] limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). "However, the law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* Thus, Defendants may only prevail on the statute of limitations at the motion to dismiss stage if it is apparent from the face of the complaint that the cause of action is barred.

6

*Robinson*, 313 F.3d at 135 (citation omitted). "If the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim." *Cain v. Dep't of Pub. Welfare*, 442 F. App'x. 638 (3d Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1987)).

Defendants claim that Plaintiff's unjust enrichment, breach of fiduciary duty, and conspiracy claims are time-barred pursuant to the applicable six-year statute of limitations, and should be dismissed. *See* N.J. STAT. ANN. 2A:14-1. The Court will address the timeless these claims in turn.

### i. Unjust Enrichment Claims

"The statute of limitations in New Jersey for claims sounding in restitution/unjust enrichment or quantum meruit is six years." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 473 (D.N.J. 1999). In *Baer v. Chase*, the Third Circuit addressed the question of accrual of quasi-contract and quantum meruit claims and held that, in the absence of specific New Jersey law to the contrary, the discovery rule does not apply to quantum meruit cases. *Baer v. Chase*, 392 F.3d 609, 622 (3d Cir. 2004). Rather, courts employ a "last rendition of services" test. *Id.* Under this test, the date of accrual of Plaintiff's unjust enrichment claim is the last date upon which Xechem sent a portion of the loan money to Xechem India.

Defendants assert that Plaintiff's unjust enrichment claims are time-barred because the Amended Complaint states that "all...transfers of the money comprising the Loan were made by 2006." (Def. Mot. at 11.) Plaintiff asserts that the claim did not accrue until 2007, when the last transfer of money from Xechem to Xechem India took place. Plaintiff claims that he "stated and included as an exhibit [to the Amended Complaint] the wire transfer number [for]

7

$100,000…sent to Xechem India on April 16, 2007 by Xechem International, Inc.[] and [that] the Board minutes of May 29, 2007 reflect this." (Pl. Opp. at 2-3.)

As explained above, a complaint cannot be amended by way of an opposition brief. The Court cannot locate where in the Amended Complaint Plaintiff stated that $100,000 was sent from Xechem to Xechem India in 2007. In fact, the Amended Complaint states that Xechem India's "financial existence from 2000 through 2006 depended on monies borrowed from the Company." (Am. Compl. ¶ 45.) In light of this, the Court finds that Plaintiff's unjust enrichment claims as pleaded are time-barred and dismisses them without prejudice.[3]

ii.  Fiduciary Duty and Conspiracy Claims

"A claim for breach of fiduciary duty, which has a six year statute of limitations, commences to run at the point the plaintiff has actual or constructive knowledge of the breach." *Fleming Cos. v. Thriftway Medford Lakes*, 913 F. Supp. 837 (D.N.J. 1995) (citing *Zola v. Gordon*, 685 F. Supp. 354, 374 (S.D.N.Y. 1988)). "A plaintiff has actual or constructive knowledge of a cause of action for breach of fiduciary duty when the plaintiff learns, or reasonably should learn, of the existence of the state of facts which may equate in law with the cause of action." *Id.* (citing *Burd v. New Jersey Tel. Co.*, 386 A.2d 1310, 1314 (1978)).

Defendants assert that Plaintiff's fiduciary duty and conspiracy claims are time-barred because Xechem should have discovered that it did not own a substantial portion of Xechem India prior to 2007. For this argument, Defendants rely on Xechem's SEC filings from 1997, 1998, and 2000-2004, in which Xechem stated that Ramesh's transfer of his ownership interest

---

[3] The Court also notes that to state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Moreover, under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).

in Xechem India to Xechem was "[s]ubject to obtaining necessary regulatory approvals in India...."[4] (Def. Mot. at 13; Def. Reply at 3-4.) However, as Plaintiff points out, whenever that clause appears in a filing, the filing also states that Xechem "owns substantially all of Xechem India" and that "as a contribution to Xechem's capital, Dr. Pandey transferred his 66-2/3% interest in Xechem India to Xechem...." (Pl. Opp. at 4.) The filings from 2005 and 2006 do not contain the qualifying language about Ramesh obtaining the necessary regulatory approvals in India.

In light of the contradictory language in the SEC filings, this Court finds that the timeliness of Plaintiff's fiduciary duty and conspiracy claims cannot be decided from the face of the complaint alone. *See Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 234 (S.D.N.Y. 2006) ("[O]n a motion to dismiss, unless Defendants can produce uncontroverted evidence that irrefutably demonstrates when plaintiff discovered or should have discovered the fraudulent scheme, they cannot satisfy the heavy burden of establishing inquiry notice as a matter of law.") (internal quotations omitted). Thus, the Court denies Defendants' motion to dismiss on statute of limitations grounds Plaintiff's fiduciary duty and conspiracy claims at this time.

b. Ultra Vires

Count Two of Plaintiff's Amended Complaint alleges that: (a) "a transfer of substantial assets of the Company required the approval of the board of directors," (b) "Ramesh transferred $1,083,682 to Xechem India without obtaining Board approval," (c) "Ramesh transferred 49% of

---

[4] The Court may consider documents in the public record, such as SEC filings, on a motion to dismiss without converting it into one for summary judgment. *See Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999) (holding that a court may consider "matters of public record" on a motion to dismiss without converting the motion to one for summary judgment); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (recognizing that, in evaluating the facial plausibility of a complaint, "courts can generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")

Xechem India from Ramesh to Bhuwan without obtaining Board approval," and, as a result, (d) "the purported transfer of the assets was an ultra vires act and was void and ineffective." (Am. Compl. ¶¶ 63-66). Defendants move to dismiss this count on several grounds, including, but not limited to, the fact that Plaintiff, as assignee of Xechem's rights, lacks standing to invoke the New Jersey ultra vires statute, N.J.S.A. 14A:3-2.

In opposing dismissal of this count of the Amended Complaint, Plaintiff does not dispute that such count is brought pursuant to N.J.S.A. 14A:3-2 ("Ultra vires transactions").[5] N.J.S.A. 14A:3-2 provides, in pertinent part:

> No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
>
> (a) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. If the unauthorized acts or transfer sought to be enjoined are being, or are to be, performed or made pursuant to any contract to which the corporation is a party, the court may, if all of the parties to the contract are parties to the proceeding and if it deems the same to be equitable, set aside and enjoin the performance of such contract, and in so doing may allow to the corporation or to the other parties to the contract, as the case may be, compensation for the loss or damage sustained by either of them which may result from the action of the court in setting aside and enjoining the performance of such contract, but anticipated profits to be derived from the performance of the contract shall not be awarded by the court as a loss or damage sustained.
>
> (b) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or

---

[5] Nor do the parties dispute that New Jersey law governs Plaintiff's claims. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995) ("The district court exercised its diversity jurisdiction. This means that the law to be applied is that of the forum state-New Jersey.").

through shareholders in a representative suit, against the incumbent or former officers or directors of the corporation.

(c) In a proceeding by the Attorney General, as provided in this act, to dissolve the corporation, or in a proceeding by the Attorney General to enjoin the corporation from the transaction of unauthorized business.

N.J.S.A. 14A:3-2.

In support of its motion to dismiss, Defendant argues that the Amended Complaint contains no factual allegations suggesting that the payments allegedly made by Ramesh exceeded the powers given to Xechem in its articles of incorporation. In support of this requirement, Defendant cites to 7A William M. Fletcher, Cyclopedia of the Law of Corporations § 3400 for the following proposition: "When properly used, the words 'ultra vires,' as applied to the act of a corporation, mean simply an act that is beyond the powers conferred upon the corporation by its charter, as distinguished from an act that is authorized by its charter." The Appellate Division has confirmed that "[i]f a board exceeds its powers as provided in its governing documents, then the board's action is ultra vires." *Cmty. Access Unlimited v. Rockcliffe*, 2012 WL 1431267, at *3 n. 4 (N.J. Super. App. Div. April 26, 2012) (citing *Verna v. Links at Valleybrook Neighborhood Ass'n,* 371 N.J. Super. 77, 91–92 (App. Div. 2004)). To the extent Plaintiff's claim for ultra vires is premised on the fact that Ramesh, acting on behalf of the Board, exceeded his powers in making the loan to Xechem India, the Court agrees that Plaintiff's Amended Complaint fails to contain any facts suggesting that the loan was made by Ramesh without the approval of the Board or exceeded the powers given to Xechem in its governing documents. In addition, to the extent Plaintiff's ultra vires claim stems from Ramesh's transfer of his 49% ownership of Xechem India to Bhuwan, the Amended Complaint provides no facts to support a claim that such a transfer would be ultra vires within the meaning of the statute.

Next, Defendant argues that Plaintiff lacks standing to invoke this statute inasmuch as he is merely assignee of the rights of Xechem, not its "legal representative" within the meaning of the statute. Plaintiff maintains, however, that by virtue of his purchase of all right, title, and interest in the assets of Xechem at the Chapter 7 auction, he became the "legal representative" for its legal claims. Thus, he argues that "the Ultra Vires claim is a legal proceeding by Xechem International, Inc. against defendant Ramesh Pandey." (Pl. Opp. at 8). Having carefully considered the parties' arguments, the Court concludes that because the Amended Complaint does not allege that Plaintiff is a shareholder of Xechem, or that the case is brought by the Attorney General or by Xechem directly, Plaintiff's claim pursuant to N.J.S.A. 14A:3-2 can only proceed if the Amended Complaint contains facts establishing that this case is brought by a receiver, trustee, or other legal representative of Xechem. Although Plaintiff argues, in his opposition brief, that he is Xechem's legal representative, the Amended Complaint does not allege any facts to support this conclusion; rather, the Amended Complaint alleges merely that Plaintiff purchased all of Xechem's assets. Moreover, Plaintiff cites to no binding legal authority in support of the theory that his purchase at the Chapter 7 auction renders him a legal representative of Xechem.

In light of the foregoing, Plaintiff has failed to state a claim pursuant to N.J.S.A. 14A:3-2 that is plausible on its face. Defendants' motion to dismiss this claim is granted; Count Two of Plaintiff's Amended Complaint is dismissed without prejudice.

c. Breach of Fiduciary Duty

Counts One, Seven, and Eleven allege breach of fiduciary duty claims as against Defendants Ramesh, Bhuwan, and Abhilasha. In particular, Count One alleges that, as an employee of the Company, Ramesh breached his fiduciary to the Company by not disclosing that

Xechem India was in fact not owned by Xechem or that Xechem India had significant assets; transferring $1,083,682 from Xechem to Xechem India for his own benefit; aiding and abetting Xechem India to obtain the loan money; and not transferring his original 66-2/3% ownership of Xechem India to the Xechem . (Am. Compl., ¶¶ 60a-h.) Similarly, Count Seven alleges that, as an Officer of the Company, Bhuwan owed a fiduciary duty to the Company that he breached by not disclosing to the Board of Directors that Xechem India was not a subsidiary of Xechem, that Bhuwan owned 99/8% of Xechem India, and that Xechem India had significant asserts. (*Id.*, ¶¶ 97a-d.) Count Seven also alleges that Bhuwan breached his fiduciary duty by transferring $106,288 from Xechem to Xechem India for his own benefit and aiding and abetting Xechem India to obtain the loan from Xechem. (*Id.* ¶¶ 97e-g.) Count Eleven alleges that, as an Officer of the Company, Abhilasha breached her fiduciary duty by not disclosing to Xechem that Xechem India was not its subsidiary; not disclosing that Xechem India was "100% owned and controlled by her father and his brothers;" not disclosing that Xechem India had significant assets; and by aiding and abetting Xechem India to obtain the loan from Xechem. (*Id.* ¶¶ 122a-e.)

The Pandey Defendants move to dismiss all fiduciary duty claims on several grounds. In opposition to Defendants' arguments, Plaintiff argues that Xechem "had no power to and was not in the business of making loans to companies it did not own." (Pl. Opp. at 5.) Plaintiff also argues that the loan was a "sham" which "was nothing more than a way for the Pandey brothers to transfer money to themselves, and use the money for personal assets and expenses, thereby depriving Xechem International, Inc. of necessary capital needed to sustain its business...." (*Id.* at 6.) He claims that neither of Xechem's other Directors, Dr. Adelaja and Mr. Burg, knew that Xechem India was owned 100% by the Pandey brothers and would not have "condoned a loan to Xechem India by Xechem International, Inc. had they known...." (*Id.* at 5.) Plaintiff states that

this loan was a "mere pretense," and that there is no contract laying out the loan's terms. (*Id.* at 6.) Plaintiff also asserts that the loan was uncollateralized, and that the loan proceeds were used to enable Xechem India to compete with Xechem and to pay for Ramesh and Bhuwan's personal expenses. (*Id.*) As to Abhilasha's duty, Plaintiff claims that, "given that she was the Sarbanes-Oxley Compliance Manager responsible for verifying the contents of SEC filings, the fact that she worked for Xechem India, the fact that her [u]ncle and [f]ather knew the ownership status of Xechem India, it [is] reasonable to presume that [she] knew..." the true ownership of Xechem India and concealed it from Xechem. (*Id.* at 11.)

In order to state a claim for breach of fiduciary duty under New Jersey law, Plaintiff must allege: (1) a fiduciary relationship comprised of "two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship," and (2) a "violation of that trust." *F.G. v. MacDonell*, 150 N.J. 550, 563–65 (1997). Defendants do not dispute that, as a general matter, "officers are fiduciaries of the corporations they serve." *See In re United Artists Theatre Co.*, 315 F.3d 217, 230 n. 14 (3d Cir. 2003); *Riddle v. Mary A. Riddle Co.*, 140 N.J. Eq. 315, 318 (Ch. Div. 1947). Nor can it be reasonably disputed that "directors of the corporation . . . are bound to act for its best interests." *Riddle*, 140 N.J. Eq. at 318.

As to the second prong, the Court notes that Plaintiff has attempted—by way of his opposition brief—to supplement his fiduciary duty claims with facts that are not set forth in the Amended Complaint. For instance, Plaintiff's allegations that the loan was *uncollateralized* and a "*sham*" which "was nothing more than a way for the Pandey brothers to transfer money to themselves, and use the money for personal assets and expenses, thereby depriving Xechem International, Inc. of necessary capital needed to sustain its business..." are not set forth in the

Amended Complaint. (Pl. Opp. at 6) (emphasis added). Plaintiff's statement that Xechem was not authorized to lend money to companies that were not its subsidiaries also does not appear in the Amended Complaint. (*Id.* at 5.) In addition, Plaintiff's assertion that Abhilasha was "responsible for verifying the content of [Xechem's] SEC filings" is not set forth in the Amended Complaint and cannot serve as a basis for a breach of fiduciary claim against her. (*Id.* at 11.) As previously stated, a complaint cannot be amended (or supplemented) by way of an opposition brief.[6] Such factual allegations concerning the nature of the loan from Xechem to Xechem India and concerning Abhilasha's duties to Xechem are not properly before this Court and cannot be considered in assessing whether Plaintiff has succeeded in stating a breach of fiduciary duty claim that is plausible *on its face.*

Even assuming the existence of a fiduciary relationship between Xechem and each of the Defendants, absent factual content concerning the nature of the loan and its terms, the Court cannot draw the reasonable inference that the loan was illegitimate, a "sham," and a product of Defendants' misleading statements. Absent any facts establishing that the loan was illegitimate, the Court cannot reasonably infer that facilitating the making of the loan was a violation of trust for purposes of stating a breach of fiduciary duty claim under New Jersey law. *See MacDonell,* 150 N.J. at 565 ("Establishing a fiduciary duty essentially requires proof that a parishioner trusted and sought counseling from the pastor. A violation of that trust constitutes a breach of the duty.").

Moreover, Defendants argue that in order to hold the Defendants liable individually for a loan made to Xechem India, Plaintiff would have to set forth facts demonstrating that the standard for piercing Xechem India's corporate veil, discussed below, has been met. Plaintiff's

---

[6] *See Zimmerman,* 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

allegations that Xechem India is a "mere alter ego" of Ramesh and Bhuwan; that "Xechem India failed to adhere to corporate formalities…;" and that there is a "unity of interest and ownership between Xechem India and…the Pandey brothers" are conclusory, merely regurgitate the legal standard for piercing the corporate veil, and are insufficient to withstand Defendants' motion to dismiss. (*See* Am. Compl. ¶¶ 25, 27, 28,140-144.) In light of the foregoing, Defendants' motion to dismiss the breach of fiduciary claims is granted; such claims are dismissed without prejudice.

      d. <u>Breach of Duty of Loyalty</u>

Counts Three, Eight, and Twelve allege claims of breach of the duty of loyalty as against Defendants Ramesh, Bhuwan, and Abhilasha. Plaintiff's breach of the duty of loyalty claims are premised on the same theory underlying his breach of fiduciary duty claims—namely, that Defendants breached their respective duties of loyalty to Xechem by not transferring ownership interest in Xechem India to Xechem; not disclosing that Xechem India was owned entirely by the Pandey brothers; actively competing with Xechem; and by transferring money from Xechem to Xechem India for their own self-interest (or aiding and abetting in said actions). (*See* Am. Compl. ¶¶ 69-73, 101-103, 126-129.)

"Common law . . . imposes on a director a duty of loyalty to the corporation served." *Matter of Seidman*, 37 F.3d 911, 933 (3d Cir. 1994). "The duty of loyalty includes a duty to avoid conflicts of interest." *Id.* (citing *Pepper v. Litton*, 308 U.S. 295, 306, 310–11 (1939)). New Jersey law, in particular, requires that "the conduct of the business of the corporation must be exercised by the directors honestly and in good faith, for what the directors, in their best judgment, deem to be for the best interest of the corporation." *Riddle*, 140 N.J. Eq. at 318.

Even assuming the existence of a fiduciary relationship between Xechem and Defendants, Plaintiff's conclusory allegations of misappropriation of Company funds—without

any facts to provide proper context—fail to nudge Plaintiff's claims of breach of duty of loyalty across the line from conceivable to plausible.  In particular, the Court reiterates that Plaintiff's allegation that the loan was uncollateralized and a "sham" which "was nothing more than a way for the Pandey brothers to transfer money to themselves, and use the money for personal assets and expenses, thereby depriving Xechem International, Inc. of necessary capital needed to sustain its business…" is not set forth in the Amended Complaint.   (Pl. Opp. at 6.)  Absent factual content demonstrating that the Pandey defendants were acting to benefit themselves at the expense of Xechem, or actively competing with Xechem, Plaintiff's conclusory allegations of self-dealing are insufficient to state a claim for breach of duty of loyalty that is plausible on its face.  Defendants' motion to dismiss Counts Three, Eight, and Twelve is granted; such claims are dismissed without prejudice.

     e.  <u>Disgorgement of Unlawful Profits</u>

    Defendants move to dismiss Plaintiffs' claims of disgorgement on the basis that disgorgement is a remedy, not a cause of action.   Plaintiff essentially concedes that disgorgement is not a standalone claim when he argues that Ramesh and Bhuwan Pandey knowingly and voluntarily accepted and retained the benefit of the $1,083,682 loan, land, and spray dryer, that retention of said money and assets would be unjust, and that, as a result, Plaintiff is entitled to the remedy of disgorgement. (Pl. Opp. at 9, 10-11). The Third Circuit has explained that "disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (quoting *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989)); *Commodity Futures Trading Comm'n v. American Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993) ("Disgorgement does not penalize, but merely deprives

wrongdoers of ill-gotten gains.") (citation omitted). The New Jersey Supreme Court has likewise construed disgorgement as an appropriate remedy in cases involving claims of unjust enrichment. *See County of Essex v. First Union Nat. Bank*, 186 N.J. 46, 49 (2006) ("The primary issues in this appeal are whether claims for unjust enrichment/disgorgement survive when there is a valid contract, and if so, when an employee of a commercial bank bribes a public official to obtain underwriting privileges on three bond issues, whether the bank must disgorge that part of the fee paid to innocent third parties. We hold that under the circumstances presented, disgorgement is an appropriate remedy."). Plaintiff cites to no binding legal authority suggesting otherwise.

In light of the foregoing, the Court agrees that Counts Five and Ten of the Amended Complaint—which assert standalone claims for disgorgement—must be dismissed with prejudice inasmuch as disgorgement is an equitable *remedy*—not a cause of action—that is, in any event, subsumed within Plaintiff's claims of unjust enrichment.[7] Defendants' motion to dismiss Plaintiff's claims of disgorgement is therefore granted.

    f.   Breach of Contract

Defendants move to dismiss Count Thirteen for breach of contract. They claim that Plaintiff has failed to specify the terms of any agreement that were allegedly violated. To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim

---

[7] The Court's dismissal in this regard does not preclude Plaintiff from seeking disgorgement as a form of relief in conjunction with his unjust enrichment claims. *See, e.g., S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) ("Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws.").

performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

In the instant matter, the Amended Complaint neither alleges the precise terms of the contract nor which provisions Defendants breached; asserting that Xechem and Xechem India entered into a loan agreement and that Xechem India has not repaid the loan (Am. Compl. ¶¶ 131-134) is insufficient for the Court to determine the terms of the agreement and whether any have been breached. *See, e.g., Chemtech Intern., Inc. v. Chem. Injection Tech., Inc.*, 170 Fed. App'x. 805, 808 (3d Cir. 2006) ("Stating that a contract was breached is stating a legal conclusion. Stating that a document was signed, that the document called for certain performance, and that performance did not occur are all factual allegations that would underpin this legal conclusion.") In his opposition, Plaintiff concedes that there was no contract when he argues that "there is no breach of contract as there never was a contract. However, if the Court disagrees that the loan is a sham, then Plaintiff reserves the right to file a breach of contract claim against the Pandey brothers, Xechem India, or both." (Pl. Opp. at 11.) In light of the foregoing, inasmuch as Defendants move to dismiss Plaintiff's breach of contract claim, their motion is granted. Plaintiff's breach of contract claim is dismissed without prejudice.

g. Civil conspiracy

Count Fourteen alleges that "in committing the acts of wrongdoing alleged herein, all defendants acted pursuant to a common scheme to conceal and misappropriate assets from the Company," and that "all defendants were aware of the common scheme and took steps in furtherance of such scheme." (Am. Compl. ¶¶ 137-138.)

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal

19

element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993) (citations and quotations omitted); *see also Banco Popular N.A. v. Gandi*, 184 N.J. 161, 177 (2005). The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" *Morgan*, 268 N.J. Super. at 364 (citations omitted). Thus, civil conspiracy is a dependent claim which must be alleged alongside a substantive claim. *See, e.g., Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998). Moreover, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact regarding defendants' joint action. *Abbot v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, a civil conspiracy claim must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." *Durham v. City and Cnty. of Erie*, 171 Fed. App'x. 412, 415 (3d Cir. 2006). A plaintiff can meet this requirement when his complaint "sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." *Lynn v. Christner*, 184 Fed. App'x. 180, 185 (3d Cir. 2006).

Plaintiff's Amended Complaint contains only a recitation of the elements of a conspiracy-related claim without reference to any supporting facts which would allow the Court to draw the reasonable inference that each of the Defendants in this action specifically engaged in the underlying unlawful acts by virtue of *an agreement*. To be clear, putting aside the deficiencies in substantive claims asserted against each of the Defendants individually, Plaintiff has failed to state a facially plausible claim of civil conspiracy because the Amended Complaint fails to contain, *inter alia*, facts establishing the existence of any type of agreement between the

Defendants to inflict an injury on the Plaintiff. *See, e.g., Morgan,* 268 N.J. Super. at 364. Defendants' motion to dismiss Count Fourteen is granted; Count Fourteen of the Amended Complaint is dismissed without prejudice.

      h.  <u>Alter ego</u>

      Defendants move to dismiss Plaintiff's claim of "Alter Ego" because it is not a separate cause of action but rather a "legal theory by which the principals of a corporate defendant may be held personally liable under the Plaintiff's existing claims against the corporation." (Def. Br. at 30.) The Court agrees.

      In New Jersey, "'[p]iercing the corporate veil is…a mechanism for… remedying the 'fundamental unfairness [that] will result from a failure to disregard the corporate form.'" *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498-99 (App. Div. 2006) (quoting *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193 (3d Cir.2003)). To pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Mall at IV Grp. Props., LLC v. Roberts*, 2005 U.S. Dist. LEXIS 31860, at *8 (D.N.J. Dec. 8, 2005) (quoting 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations, § 41.30 (perm. ed., rev. vol. 1999)). Plaintiff essentially concedes that alter ego is not a standalone claim when he argues that "Ramesh and Bhuwan Pandey…have…a unity of interest with Xechem India[] sufficient for the Court to 'pierce the corporate veil' of Xechem India as a remedy for unjust actions." (Pl. Opp. at 12.)

Since, "[p]iercing the corporate veil is an equitable *remedy* through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form," and not a distinct cause of action, Count Fifteen is hereby dismissed with prejudice.[8] *Mall at IV Grp. Props.*, 2005 U.S. Dist. LEXIS 31860, at *8. Defendants' motion to dismiss Plaintiff's claim of alter ego is therefore granted.

## IV.    CONCLUSION

Based on the reasons set forth above, Defendants' motion to dismiss [CM/ECF No. 20] is granted. Count Six is deemed withdrawn. Counts Five, Ten, and Fifteen are dismissed *with* prejudice. All remaining counts–Counts One, Two, Three, Four, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen–are dismissed *without* prejudice. Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies in Counts One, Two, Three, Four, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and Fourteen **on or before December 13, 2013**.[9] Failure to do so will result in dismissal of the Amended Complaint *with prejudice*.

An appropriate Order accompanies this Opinion.

José L. Linares
United States District Judge

Dated: November 13, 2013

---

[8] Plaintiff is not precluded from seeking to pierce the corporate veil as a remedy in the instant action for any claim against Xechem India. He may plead the necessary elements to pierce the corporate veil if he wishes to hold the Defendants individually liable for misdeeds of Xechem India.

[9] Plaintiff may not add any additional causes of action without adhering to Federal Rule of Civil Procedure 15(a).