**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SWIFT,<br><br>          Plaintiff,<br><br>v.<br><br>RAMESH PANDEY, et al.,<br><br>          Defendants. | Civil Action No. 13-650 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendants Ramesh Pandey ("Ramesh"), Bhuwan Pandey ("Bhuwan"), and Abhilasha Pandey ("Abhilasha") (collectively "Defendants")' motion to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [CM/ECF No. 36.] The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part. The Court denies Defendants' motion to dismiss Counts Four and Seven for Unjust Enrichment against Ramesh and Bhuwan. All remaining counts, with the exception of Count Twelve, are dismissed *with prejudice*.

## I.    **BACKGROUND**[2]

Plaintiff's Amended Complaint was filed on August 5, 2013. In an opinion issued on November 13, 2013, this Court granted Defendants' motion to dismiss the Amended Complain. [ECF No. 26.] Counts One, Two, Three, Four, Seven, Eight, Nine, Eleven, Twelve, Thirteen, and

---

[2] The Court accepts the following facts asserted in Plaintiff's Complaint as true solely for purposes of this motion.

Fourteen of the Amended Complaint were dismissed without prejudice[3].  Plaintiff filed a Second Amended Complaint on December 13, 2013. [CM/ECF No. 28.] According to the Second Amended Complaint, Plaintiff, Robert Swift – a Colorado resident – purchased all the right, title, and interest to all assets of Xechem International, Inc. and Xechem, Inc. (collectively "Xechem") at Chapter 7 auction in Bankruptcy Court on August 24, 2011   (Second Amend. Compl. (henceforth "Sec. Am. Compl.") ¶ 6.)  These assets included any and all right, title, and interest to Xechem Pvt. Limited ("Xechem India") and Xechem Pharmaceuticals Nigeria, Ltd.   (*Id.*) This action stems from the alleged wrongful conduct of the Defendants in connection with Xechem and Xechem India.

Xechem India is based out of New Delhi, India and is owned and operated by Ramesh and Bhuwan. (*Id.* at ¶¶ 12, 14-15.)  Plaintiff alleges that Xechem India was a "shell company" that the Defendants used to funnel money out of Xechem for their own financial benefit.  (*See, e.g., id.* at ¶¶ 27-42.)  Ramesh was the Chief Executive Officer and Treasurer of Xechem from 1994 through July 5, 2007.  (*Id.* at ¶ 14.)  Ramesh is also the Chief Executive Officer and a director of Xechem India.  (*Id.*)  Bhuwan was an officer of Xechem from 2002 until May 29, 2007.  (*Id.* at ¶15.)  He is also General Manager and a director of Xechem India.  (*Id.*) In 1998, Ramesh transferred nearly all of his shares in Xechem India to Bhuwan, who, as of August 2007, owned nearly 100 percent of its stock.  (*Id.* at ¶¶ 32-33.)  Abhilasha Pandey "worked for Xechem India since at least January 2000, and was the Sarbanes-Oxley…Compliance Manager for Xechem from June 2006 to July 2007." (*Id.* at ¶ 164.)

Plaintiff joined Xechem's board of directors in May 2007 as the representative of the interest of convertible bondholders he had brought to the company.  (*Id.* at ¶¶ 6, 51.)  Over $2

---

[3] Count Six was withdrawn and Counts Five, Ten, and Fifteen were dismissed with prejudice.

million of the money raised through the convertible bond offering was from Plaintiff's friends and family. (*Id.*)

Plaintiff alleges that Ramesh told the Xechem Board of Directors that Xechem India was a subsidiary of Xechem, (*id.* at ¶ 17), and that Xechem should lend money to Xechem India. (*Id.*) As a result, Ramesh wired money from Xechem to Xechem India, and "[b]etween July 1, 2000 and April 16, 2007, Xechem India received $977,394 from Xechem." (*Id.* at ¶¶ 17-18.) At a May 29, 2007 meeting of Xechem's board of directors, "the Board demanded an accounting of all money lent to Xechem India". (*Id.* at ¶ 52.) Ramesh told the board that $700,000 had been lent from Xechem from Xechem India, that $100,000 of that loan had been sent recently, "and that Xechem India had no assets." (*Id.*) Plaintiff alleges that alhough both Xechem and Xechem India treated this transaction in their financial records as a loan, there was no loan contract or repayment agreement, and the transaction was not secured by collateral. (*Id.* at ¶¶ 19-23.) Ramesh was subsequently removed from his position as Chief Executive Officer, President, and Treasurer of Xechem on July 5, 2007. (*Id.* at ¶ 51.) On November 10, 2008, Xechem filed for Chapter 11 bankruptcy. (*Id.* at ¶ 52.) Xechem India has not repaid the principal or interest on this loan to Xechem, which, at this point, is over $2 million. (*Id.* at ¶ 83.)

Plaintiff claims that all of the Defendants concealed and/or failed to disclose that Xechem India was owned by Ramesh and Bhuwan, contrary to representations that Ramesh had previously made to Xechem's board of directors and the "investing public" that Xechem India was a "subsidiary" of Xechem. (*Id.* at 77.) Plaintiff alleges that Xechem's Board of Directors believed that the company owned two-thirds of Xechem India, and this belief was based on statements in "SEC filings by Ramesh, statements made by Ramesh to the Board, and other non-public documents that refer to Xechem India as a subsidiary of Xechem." (*Id.* ¶ 73.) Plaintiff

3

claims that Xechem's board would not have authorized the loan "if it had known that [Xechem India] was not a Company subsidiary" and that "Bhuwan owned 99.8% of Xechem India." (*Id.* at ¶¶ 72, 74.)

Plaintiff asserts that, through Xechem India, Ramesh and Bhuwan, assisted by Abhilasha, used the proceeds of the "sham loan" to: "(1) lease office space in India from Ramesh; (2) pay money to relatives of Ramesh and Bhuwan in India; (3) pay the Defendants' 'personal expenses'; (d) buy 'assets in India'; (4) acquire a leasehold interest in certain land in India; and (5) purchase a 'spray dryer' machine." (*Id.* at ¶ 82.) In addition, Plaintiff alleges that Defendants concealed these assets from Xechem's board. (*Id.*)

In light of the foregoing, Plaintiff's Amended Complaint asserts twelve causes of action that fall into the following nine categories: **(1)** breach of fiduciary duty as against Ramesh, Bhuwan, and Abhilasha; **(2)** breach of duty of loyalty as against Ramesh, Bhuwan, and Abhilasha; **(3)** ultra vires act as against all Defendants; **(4)** unjust enrichment as against Ramesh, Bhuwan, Abhishala, and Xechem India; and **(5)** civil conspiracy as against all Defendants. Defendants now move to dismiss all claims asserted in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

4

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

## III.    DISCUSSION

Defendants present a variety of arguments in support of their motion to dismiss. The Court will address each argument, in turn.

### 1.    Breach of Fiduciary Duty and Duty of Loyalty Claims—Counts One, Three, Five, Six, Eight and Nine

Counts One, Three, Five, Six, Eight and Nine allege, in pertinent part, that Defendants Ramesh, Bhuwan and Abhilasha respectively breached their fiduciary duties of loyalty to Xechem. In particular, Counts One, Five and Eight (captioned "Breach of Fiduciary Duty") allege that Defendants breached their respective fiduciary duties of loyalty to Xechem by engaging in self-dealing. Counts Three, Six and Nine (captioned "Breach of Duty of Loyalty") allege that Defendants breached their respective duties of loyalty to Xechem by misappropriating its money. Plaintiff alleges that each of the Defendants breached their respective fiduciary duties of loyalty to Xechem by: (1) engaging in self-dealing, and (2) misappropriating Xechem's funds. In seeking dismissal of the foregoing claims, Defendants urge the Court to apply the substantive law of the state of Delaware—not New Jersey. Plaintiff's Second Amended Complaint indicates, instead, that New Jersey law should apply to such claims. The Court agrees, as a general matter, that the possible laws to be applied are Delaware (Xechem's state of

incorporation)[4] and New Jersey (Xechem's principal place of business and the state in which Defendants are allegedly domiciled).[6]

### A.      Applicable Law

Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995). If a choice of law dispute arises, a federal court sitting in diversity applies the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Warriner v. Stanton,* 475 F.3d 497, 499–500 (3d Cir. 2007). In *P.V. v. Camp Jaycee*, the New Jersey Supreme Court held that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (2008). New Jersey's "most significant relationship" test consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Id.* at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman—La Roche, Inc.*, 189 N.J. 615, 621, 917 A.2d 767 (2007). However, if a conflict is found, the court must then determine which state has the "most significant relationship" to the claim at issue, as analyzed under the Restatement (Second) of Conflict of Laws. *Camp Jaycee*, 197 N.J. at 136. This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* at 143.

---

[4] Amend. Compl. ¶ 43.
[6] Amend. Compl., ¶¶7-10.

Turning now to the first prong of New Jersey's "most significant relationship" test, the Court agrees with Defendant that there is an actual conflict because the statute of limitations for bringing tort claims in New Jersey is six years from the date of accrual, *see* N.J.S.A. § 2A:14-1,[8] whereas Delaware imposes a three-year statute of limitations for breach of fiduciary duty claims, *see* 10 Del.C. § 8106.[9]  Based on the facts pled, the Court construes Plaintiff's breach of fiduciary duty claims as accruing at some point in 2007.  (Sec. Am. Compl., ¶ 24).[10]  Thus, the apparent conflict between New Jersey's six year statute of limitations and Delaware's three year

---

[8] In particular, the statute provides:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-1.

[9] In particular, the Delaware statute provides:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

10 Del.C. § 8106.

[10] *See generally Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong."); *Tevis v. Tevis*, 79 N.J. 422, 431 (1979) (stating that a cause of action in tort usually accrues "at the time of the commission of the wrong and the suffering of injury").  As discussed in greater detail below, Plaintiff provides no compelling legal argument or binding legal authority suggesting that his fiduciary duty claims accrued at a later date.

statute of limitations would be material in the adjudication of Plaintiff's breach of fiduciary duty claims inasmuch as such claims would be time-barred if Delaware law is found to apply.[11]

Before reaching the second prong of New Jersey's "most significant relationship" test, the Court notes that "[u]nder New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citing *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148 (Law Div. 1985)); *see also North Am. Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 Fed. Appx. 176, 182 n. 14 (3d Cir. 2013) ("Although New Jersey law governs NASCO's claims generally, Delaware law governs the internal affairs of a Delaware entity."). More specifically, "under the internal affairs doctrine, anyone controlling a Delaware corporation is subject to Delaware law on fiduciary obligations to the corporation and other relevant stakeholders." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) (citing *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 960 (Del. Ch. 2007) (explaining that the law of fiduciary obligations is one of the most important ways a state regulates a corporation's internal affairs) and Restatement (Second) of Conflict of Laws § 306 (1971)). Xechem is a Delaware corporation. [*See* CM/ECF No. 28, ¶ 43.] Plaintiff's claims of breach of fiduciary duty and breach of duty of loyalty are all premised on the notion that each of the Defendants owed a fiduciary duty to Xechem by virtue of their respective roles within the company and that they each breached their respective duties by misappropriating Xechem's money and by engaging in other forms of self-dealing, resulting in financial injury to Xechem. This Court finds that such allegations—of duties owed by Ramesh, Bhuwan and Abhilasha to Xechem by virtue of their roles as director and officers of the company—fall squarely within the scope of "internal affairs" as contemplated by the internal affairs doctrine. *See generally Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal

---

[11] Plaintiff's Complaint was filed in January 2013.

8

affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."). To the extent Plaintiff attempts to argue that the claims at issue are distinguishable from those alleged in the *Intarome* case,[12] or do not otherwise fall within the internal corporate affairs doctrine because the claims are not brought by Xechem's shareholders, the Court finds Plaintiff's argument to be unconvincing. Although Plaintiff correctly notes that this action is not brought as a shareholders derivative action, Xechem—through Plaintiff—is suing its *own* former director and officers for: (1) allegedly engaging in self-dealing and competing against the company while acting in their capacity as officers of the company, and (2) for allegedly misappropriating the company's money, also while acting in their capacity as officers of the company. It would be difficult to conceive of a situation that could be any *more* "peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders" than the fact pattern alleged by Plaintiff in the Second Amended Complaint. *Edgar,* 457 U.S. at 645. Thus, pursuant to the internal corporate affairs doctrine, the Court begins its prong two analysis with the presumption that Delaware law governs claims relating to Xechem's internal corporate affairs.[13] *See Fagin,* 432 F.3d at 282.

---

[12] *Intarome Fragrance & Flavor Corp. v. Zarkades,* Civ. No. 07-873, 2009 WL 931036, at *14 (D.N.J. March 30, 2009).

[13] "The internal affairs doctrine, however, is not without exception. As stated in § 302(2) of the Restatement, '[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.' " *Intarome Fragrance & Flavor Corp. v. Zarkades,* Civ. No. 07-873, 2009 WL 931036, at *14 (D.N.J. March 30, 2009). Thus, the Court will proceed in its choice of law analysis to determine if New Jersey, nevertheless, has a more significant relationship to the parties and/or transactions in question. *See generally* Restatement (Second) of Conflict of Laws § 302 cmt. b (1971) ("The

9

The second step of the most significant relationship test is to weigh the factors enumerated in the section of the Restatement that corresponds to particular cause of action, in this case, § 309 of the Restatement (Second) of Conflict of Laws (1971).   Section 309 provides:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309 (1971).  Section 6 of the Restatement (Second) of Conflict of Laws, in turn, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  Absent a statutory directive from the forum state, the Court looks to the considerations set forth in subsection two of § 6.  "Reduced to their essence, the section 6 principles are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147.

---

principles stated in § 6 underlie all rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the occurrence and the parties.").

Turning now to the § 6 factors, the first consideration—the interest of interstate comity—seeks "to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 cmt. d. In other words, "[i]t considers 'whether application of a competing state's law would frustrate the policies of other interested states.' " *Camp Jaycee*, 197 N.J. at 152 (citation omitted). In Delaware, "the purpose of an award of damages in a tort action is just and full compensation, with the focus on the plaintiff's injury and loss." *DeAngelis v. Harrison*, 628 A.2d 77, 81 (Del. 1993) (*citing Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987)). In Delaware, the "public policy underlying statutes of limitation in general [is] to compel timely pursuit of claims and to avoid the adjudication of stale claims." *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 532 (Del. Ch. 2005). In New Jersey, as the Third Circuit has consistently identified, the policies underlying tort consist "primarily of compensation and deterrence." *Warriner v. Stanton*, 475 F.3d 497, 501 (3d Cir. 1007) (quoting *Schum v. Bailey*, 578 F.2d 493, 496 (3d Cir. 1978) (internal quotations omitted)). The policies underlying New Jersey's statutes of limitations are to "induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend" and "to spare the courts from litigation of stale claims." *Galligan v. Westfield Centre Serv., Inc.*, 82 N.J. 188, 192 (1980) (citations omitted). Thus, the Court finds that New Jersey and Delaware have similar policies regarding their statutes of limitations and general tort laws, such that application of Delaware law would not frustrate the policy of New Jersey.

The second factor—the interests of the parties—is "a factor of extreme importance in the field of contracts," but generally "plays little or no part in a choice-of-law question in the field of torts." *Fu v. Fu*, 160 N.J. 108, 123 (1999) (citing Restatement (Second) of Conflict of Laws §

145 (1971) comment b). "That is so because persons who cause unintentional injury 'usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct.' " *Id.*

The third factor—the interests underlying the field of tort law—largely overlaps with the first factor. As discussed above, the Court has concluded that the public policies underlying Delaware's and New Jersey's tort laws and statutes of limitations are similar. For this reason, the Court finds that the third factor does not serve to change the presumptive choice of law under the internal affairs doctrine.

The fourth factor—the interests of judicial administration—requires the court to consider "issues such as practicality and ease of application." *Camp Jaycee*, 197 N.J. at 154. Here, the application of New Jersey law would be slightly easier than the application of Delaware law, but this factor, without more, is not sufficient to outweigh the internal affairs doctrine.

The New Jersey Supreme Court has described the last factor—the competing interests of the states—as "the most significant factor in the tort field." *Fu,* 160 N.J. at 125. This factor requires courts to consider:

> whether application of a competing state's law under the circumstances of the case "will advance the policies that the law was intended to promote." The "law" can be either the decisional or statutory law of a state. The focus of this inquiry should be on "what [policies] the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, whether those concerns will be furthered by applying that law to the multi-state situation." This is another way of saying that "[i]f a state's contacts [with the transaction] are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply."

*Pfizer, Inc. v. Employers Ins. of Wausau*, 154 N.J. 187, 198 (1998).  The Court agrees with Defendants that Plaintiff's allegations of self-dealing and misappropriation of Xechem's money are, by their very nature, inextricably intertwined with the internal affairs of Xechem.  In Plaintiff's own words, Defendants misled Xechem's Board into violating Xechem's policy of not lending money to non-subsidiaries, and unwittingly transferring money to a company owned by Ramesh and Bhuwan.  (Sec. Am. Compl, ¶ 45).  Plaintiff does not allege any substantive facts tying Defendants' alleged misconduct in this regard with the State of New Jersey.  Plaintiff, himself, is a citizen of Colorado. (*Id.* at ¶ 2).  The only real connection to the State of New Jersey is that Defendants are alleged to be domiciled in New Jersey, and that Xechem employed Defendants in its corporate offices in New Jersey.  (*Id.*).  "The domicile, residence, place of incorporation, and place of business of a defendant corporation are relevant, although not dispositive, considerations in a choice-of-law determination." *Fu*, 160 N.J. at 133.  Moreover, "unlike more conventional torts, a breach of fiduciary duty by an officer or director based on actions causing the corporation to incur additional debt is not manifested through identifiable physical conduct or harm.  As such, the corporation sustains an injury in the state of incorporation and wherever it has offices." *In re Innovation Fuels, Inc.*, No. 13-1004, 2013 WL 3835827, at *6 (Bankr. D.N.J. 2013).  Absent any specific facts establishing a significant connection to New Jersey, the Court does not find that the weight of the fourth and/or fifth factors—which could arguably sway in favor of New Jersey—are sufficient to justify departure from the presumption of the internal affairs doctrine.

Thus, the Court concludes that Plaintiff's breach of fiduciary duty and breach of duty of loyalty claims are governed by the law of the state of Xechem's incorporation—Delaware law. *See, e.g., North Am. Steel Connection, Inc.*, 515 Fed. Appx. at 182 n. 14.  (3d Cir. 2013)

("Although New Jersey law governs NASCO's claims generally, Delaware law governs the internal affairs of a Delaware entity.").

**B.      Analysis**

Defendants move to dismiss Counts One, Three, Five, Six, Eight and Nine as time-barred.  Each of the foregoing counts allege that Defendants Ramesh, Bhuwan and Abhilasha breached their respective fiduciary duties of loyalty to Xechem by misleading Xechem's Board, engaging in self-dealing, and misappropriating Xechem's money.  As stated above, Delaware imposes a three-year statute of limitations for breach of fiduciary duty claims.  *See* 10 Del.C. § 8106; *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("Under Delaware law, a three-year statute of limitations applies to claims for breach of contract or breach of fiduciary duty.").  "A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong." *Fike*, 754 A.2d at 26-261 (citation omitted).  Plaintiff's fiduciary duty claims, first asserted in January 2013, relate to matters occurring in 2007.  Such claims are therefore time-barred unless some basis exists to toll the running of that statute.  *Id.*  Plaintiff "bears the burden of proving that tolling is available." *Id.*

Generally speaking, "the limitations period is tolled until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury." *Fike*, 754 A.2d at 261.  Plaintiff himself alleges that Xechem was aware that Xechem India was not its subsidiary as early as May 29, 2007, and no later than September 20, 2007.  (Sec. Am. Compl., ¶¶ 52, 62-63.)  The Court can also draw the reasonable inference that Xechem was aware of Ramesh's alleged misappropriation and self-dealing—from which Bhuwan and Abhilasha's alleged liability flows—as of the date on which he was removed from office as CEO, President and Treasurer of

the Xechem—July 5, 2007. (Sec. Am. Compl., ¶ 24). *See generally Iqbal*, 556 U.S. at 663. Plaintiff has given the Court no basis on which to find otherwise.

"The theory of equitable tolling will stop the running of the limitations period 'for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary.' " *Fike*, 754 A. 2d at 261. But even equitable tolling "will only last until they knew or had reason to know of the facts constituting the alleged wrong. *Id.* As discussed above, the facts alleged in the Second Amended Complaint allow the Court to draw the reasonable inference that Xechem knew of the facts constituting Ramesh's alleged misconduct by the date on which he was removed from office as CEO, President and Treasurer of Xechem, or at the very least by September 20, 2007—the date the company filed an SEC statement noting that it located a document in India stating that Xechem India was owned 100% by "Dr. Pandey and two family members." (Sec. Am. Compl., ¶¶ 52, 60, 63. Plaintiff has given the Court absolutely no basis on which to find otherwise.

To be clear, Plaintiff has come forward with **no** legal argument **or** legal authority even suggesting that the statute of limitations should be tolled in this case.[14] In fact, Plaintiff does not even raise an equitable tolling argument.[15] As the Court clearly stated in its prior Opinion, "[w]hile the Court is mindful of Plaintiff's *pro se* status, it is not the Court's responsibility to

---

[14] To the extent any aspect of Plaintiff's opposition brief should be construed as suggesting that the statute of limitations pertaining to his fiduciary duty claims should be tolled until the date on which he purchased all right, title and interest in any and all assets of Xechem—August 24, 2011—the Court sees no legal basis for tolling the statute of limitations in that manner. To the contrary, Plaintiff concedes that he stands in Xechem's shoes in bringing this action. In other words, there is no question that plaintiff, as assignee of Xechem's rights and interests, seeks redress for the damages allegedly sustained by Xechem. *See, e.g.,* Sec. Am. Compl., ¶¶ 92 ("Xechem has been injured by loss of the economic benefit . . . ."); 107 ("Ramesh damaged Xechem as a result of his acts.

[15] To the contrary, it is Plaintiff's position that New Jersey's six-year statute of limitations should apply to Plaintiff's breach of fiduciary duty claims.

engage in its own legal research in order to find legal authority to support Plaintiff's arguments—nor would it be proper for the Court to do so. Again, the Court has done its best, under the circumstances, to assess Defendants' legal arguments, along with the arguments raised by Plaintiff in opposition, despite Plaintiff's failure to cite to any legal authority in support of same." November 13, 2013 Op. at 6. The Court has also made every effort to liberally construe Plaintiff's *pro se* submissions. That being said, the Court cannot formulate and/or rule on legal arguments that Plaintiff, himself, has not made.

As such, for the reasons set forth above, the Court finds that Plaintiff's breach of fiduciary duty and breach of fiduciary duty of loyalty claims are time-barred. Defendants' motion to dismiss Counts One, Three, Five, Six, Eight and Nine is granted. Counts One, Three, Five, Six, Eight and Nine of Plaintiff's Second Amended Complaint are hereby dismissed *with prejudice.*[16]

## 2.    Ultra Vires—Count Two

---

[16] Even assuming, *arguendo,* that New Jersey law were to apply to Plaintiff's breach of fiduciary duty claims, such claims would still be dismissed *with* prejudice inasmuch as New Jersey courts have consistently held, as a matter of public policy, that tort claims cannot be assigned before judgment. *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,* 124 F.3d 487, 490 (3d Cir. 1997) (citing *Village of Ridgewood v. Shell Oil Co.,* 289 N.J. Super. 181, 673 A.2d 300, 307–08 (1996)); *Costanzo v. Costanzo,* 248 N.J. Super. 116, 121 (Law Div.1991) ("[I]n New Jersey, as a matter of public policy, a tort claim cannot be assigned."); *see, e.g., In re O'Dowd,* 233 F.3d 197, 201 (3d Cir. 2000) ("A true purchase of the omitted claims would have been void under the New Jersey common law prohibition against assigning prejudgment tort claims."). Plaintiff does not dispute that a prejudgment tort claim cannot be assigned under New Jersey law; rather, Plaintiff maintains that a breach of fiduciary duty claim "is not necessarily a tort claim." (Pl. Opp'n Br. at 6). Plaintiff cites to absolutely no legal authority in support of this position. In any event, the Appellate Division has specifically recognized claims for breach of the duty of loyalty and breach of fiduciary duty, in the corporate context, as torts. *See Wolfson v. Bonello,* 270 N.J. Super. 274, 291 n. 12 (App. Div. 1994) ("The alleged torts committed by Bonello included breach of the duty of loyalty, breach of fiduciary duty, waste of corporate assets, misappropriation of corporate opportunity and conversion."); *In re Innovation Fuels, Inc.,* 2013 WL 3835827, at *6 (recognizing that breach of fiduciary duty in corporate context is a tort); *see generally In re Estate of Lash,* 169 N.J. 20, 27 (2001) ("Breach of fiduciary duty is a tort."). Plaintiff does not dispute that he asserts his claims of breach of duty of loyalty and breach of fiduciary duty on behalf of—or as assignee of rights belonging to—Xechem. In light of the foregoing, Plaintiff has failed to state a claim of breach of duty of loyalty and/or breach of fiduciary duty that is plausible on its face. *See, e.g., Conopco, Inc. v. McCreadie,* 826 F. Supp. 855, 867 (D.N.J. 1993) ("It is clear that under New Jersey law, choses in action arising out of tort are not assignable prior to judgment. Because Conopco asserts its claims of professional negligence and malpractice only as an assignee, those tort claims must fail as a matter of law.").

Count Two of Plaintiff's Second Amended Complaint alleges that: (a) "Xechem was not in the business of loaning money," (b) "Xechem lacked the capacity or power to loan money to a company that was not its subsidiary," and (c) "Ramesh transferred substantial assets of Xechem, $977,3940.00 and a spray dryer worth $106,288 to Xechem India without board of director approval, which is an ultra vires act." (Sec. Am. Compl., ¶¶ 99-103.)   Defendants move to dismiss this count on two grounds: (1) Plaintiff has failed to allege facts establishing that the alleged transfer of assets exceeded Xechem's powers under its articles of incorporation, and (2) Plaintiff has failed to allege facts establishing that he has standing to bring an ultra vires claim— i.e., he has failed to allege sufficient facts establishing that he is Xechem's legal representative— as opposed to merely an assignee of certain of its rights.

Even assuming, *arguendo*, that Plaintiff has standing to pursue an ultra vires claim on behalf of Xechem,[18] the Court finds that dismissal of this claim is proper given that Plaintiff has once again failed to allege any facts which would allow the Court to draw the reasonable inference that Ramesh's alleged "sham loan" and transfer of the spray dryer to Xechem India exceeded Xechem's powers, or the powers conferred on the Board, as provided in Xechem's governing documents.

As stated in the Court's prior Opinion, the Appellate Division has held that "[i]f a board exceeds its powers as provided in its governing documents, then the board's action is ultra vires." *Cmty. Access Unlimited v. Rockcliffe*, No. L-3487-07, 2012 WL 1431267, at *3 n. 4 (N.J. Super. App. Div. April 26, 2012) (citing *Verna v. Links at Valleybrook Neighborhood Ass'n*, 371 N.J. Super. 77, 91–92 (App. Div. 2004)).   Black's Law Dictionary defines "governing document" as "[a] document that defines or organizes an organization, or grants or establishes its

---

[18] *See* N.J.S.A. 14A:3-2.  The parties do not dispute that New Jersey law applies to this claim.  *See generally Am. Cyanamid Co. v. Fermenta Animal Health,* 54 F.3d 177, 180 (3d Cir.1995).

authority and governance.   An organization's governing documents may include a charter, articles of incorporation or association, a constitution, bylaws and rules." Black's Law Dictionary 555 (9[th] ed. 2009).   The Second Amended Complaint makes no reference to Xechem's governing document(s).   Nor does the Second Amended Complaint allege that Xechem, or its Board of Directors, lacked authority to lend money or transfer assets to other companies.  Alleging that Xechem was not in the business of making loans, or that it would not have lent money to Xechem India had it known it was not its subsidiary, is insufficient to plausibly allege that such acts were beyond the company's powers.   Swift states that Ramesh transferred the assets without Board approval, which was an alleged ultra vires act, but his entire Complaint is premised on the assertion, alleged throughout, that Ramesh misled the Board into believing that Xechem India was its subsidiary, and therefore into approving a "sham loan." (*Compare* Sec. Am. Compl., ¶ 103 *with* ¶¶ 75, 80.)  It is not plausible for Swift to assert only under his ultra vires claim that the Board did not approve the loan, and this fact is, in any event, immaterial for the reasons stated below.

"In its true sense the phrase ultra vires describes action which is beyond the purpose or power of the corporation." *McDermott v. Bear Film Co.*, 219 Cal. App. 2d 607, 610, 33 Cal. Rptr. 486, 489 (Cal. App. 1963).  Based on the facts pled, the Court cannot draw the reasonable inference that Ramesh's actions—in transferring assets to Xechem India with or without Board approval—were beyond Xechem's powers, as enumerated in its articles in incorporation.[19]  That

---

[19] *See, e.g., Seabrook Island Property Owners Ass'n v. Pelzer*, 356 S.E.2d 411, 414 (S.C. App. 1987) ("A corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are ultra vires."); *Twisp Min. & Smelting Co. v. Chelan Min. Co.,* 133 P.2d 300, 312 (Wash. 1943) ("The term 'ultra vires', in so far as it applies to corporate transactions, is used to describe corporate transactions which are outside the objects for which the corporation was created, as defined in the law of its organization, and therefore beyond the power conferred on the corporation by the legislature."); *Savannah Ice Co. v. Canal-Louisiana Bank & Trust Co.,* 79 S.E. 45, 46 (Ga. Ct. App. 1913) ("An ultra vires act of a corporation is one in excess of charter power.").

Ramesh may have concealed his ownership in Xechem India, and transferred assets from Xechem to Xechem India, and that Xechem may not have lent money to Xechem India had it known it was not its subsidiary do not—*without more*—render the transfer of assets, or the related transactions, as outside the object for which Xechem was created.[20]

In light of the foregoing, Plaintiff has failed to plead a facially plausible claim of ultra vires under New Jersey law. *See Rockcliffe*, 2012 WL 1431267, at *3 n. 4. Because the Court has already given Plaintiff an opportunity to cure the pleading deficiencies in this claim, Count Two of Plaintiff's Second Amended Complaint is hereby dismissed with prejudice.

### 3.   Unjust Enrichment—Counts Four, Seven, Ten, and Twelve

Counts Four, Seven and Ten contain claims of unjust enrichment as against Ramesh, Bhuwan and Abhilasha Pandey, and Count Twelve pleads a claim for unjust enrichment in the alternative as against Xechem India.  Defendants move to dismiss Counts Four, Seven, and Ten on the basis that such claims are in substance tort claims and New Jersey does not recognize unjust enrichment as an independent tort cause of action.[21]

To state a claim for unjust enrichment under New Jersey law,[22] a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant

---

[20] *See, e.g., Nat'l Lock Co. v. Hogland*, 101 F.2d 576, 581 (7th Cir. 1938) ("A Board of Directors cannot increase or decrease corporate powers; and no action of a Board of Directors which the corporation has the power to perform through its directors can be ultra vires of the corporation merely because the board previously has declared by resolution that such action will not be taken.").

[21] Notably, Defendants' <u>only</u> argument as to why this Court should dismiss Plaintiff's unjust enrichment claims is that they sound in tort.  Defendants do not address the theory of piercing the corporate veil.  Defendants also do not move to dismiss Count Twelve for unjust enrichment against Xechem India.

[22] The parties do not dispute that New Jersey law applies to Plaintiff's claims of unjust enrichment. *See generally Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995).

beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Moreover, under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).

The Court has carefully reviewed Counts Four, Seven, and Ten of the Second Amended Complaint. Taking Plaintiff's allegations as true, the crux of his claims is that, as a result of the Defendants' actions to cover up the true ownership of Xechem India, Xechem lent money to Xechem India that it otherwise would not have, and that the Defendants used the money for their own personal gain. The Court finds Plaintiff's allegations in this respect sufficient to survive a motion to dismiss.

Specifically, Plaintiff alleges that Xechem lent money to Xechem India, and that Xechem expected to be, but has not been, paid back. At this stage, the Court must accept these assertions as true. Even if Xechem did not expect to be paid back at the time it lent money to Xechem India, a claim for unjust enrichment will survive dismissal when Plaintiff demonstrates that "'if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332, 334 (N.J.1966)). Since Xechem allegedly did not lend money to non-subsidiaries, at the very least it would have expected to be paid back had it known the truth about Xechem India's ownership. Moreover, it appears from the allegations that no express contract governs the loan from Xechem to Xechem India. Thus, Plaintiff's allegations that Xechem lent money to Xechem India with the expectation of renumeration, or that Xechem would have expected renumeration had it known the true facts at the time, are sufficient to state a plausible claim for

20

unjust enrichment against Xechem India or, if Plaintiff is able to pierce the corporate veil, its owners. Unlike Plaintiff's claim in his related case, No. 13-cv-649, while Plaintiff's allegations in the instant matter also revolve around accusations of misappropriation and breach of fiduciary duties, claims surrounding the making of a loan can be understood as quasi-contractual, not tort-based, causes of action. *See Student Fin. Corp. v. Royal Indem. Co.*, 2004 U.S. Dist. LEXIS 4952, at *20-21 (D. Del. Mar. 23, 2004).

However, Plaintiff includes no evidence whatsoever that should he ultimately be able to pierce the corporate veil, Abilasha would be liable under an unjust enrichment theory. Xechem did not lend money to Abilasha, and she has no ownership stake in Xechem India. Plaintiff's claims against Abilasha, for what essentially amount to aiding and abetting the other Defendants' fraud, sound in tort. New Jersey does not recognize unjust enrichment as an independent tort cause of action. *See Castro v. NYT Television,* 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."). Therefore, the unjust enrichment claim against her (Count Ten) is dismissed.

Defendants' motion to dismiss Counts Four and Seven is denied.

## 4.    Conspiracy—Count Eleven

Count Twelve contains a claim for civil conspiracy as against all Defendants. It alleges that "in committing the acts of wrongdoing alleged herein, all defendants acted pursuant to a common scheme to conceal and misappropriate assets from the Company;" that "they acted

together to hide the illegally [sic] transfer of Xechem's money to Xechem India through a sham loan;" that "all defendants were aware of the common scheme and took steps in furtherance of such scheme by concealing facts that would have prevented or stopped the transfer of Xechem's money to Xechem India in the form of a sham loan;" and that "[b]y concealing the true ownership of Xechem India they acted together to prevent the transfer of 66 2/3% of Xechem India to Xechem." (Am. Compl. ¶¶ 196-200.)

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders,* 268 N.J. Super. 337, 364 (App. Div. 1993) (citations and quotations omitted); *see also Banco Popular N.A. v. Gandi,* 184 N.J. 161, 177 (2005). The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" *Morgan*, 268 N.J. Super. at 364 (citations omitted). Thus, civil conspiracy is a dependent claim which must be alleged alongside a substantive claim. *See, e.g., Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998). Moreover, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact regarding defendants' joint action. *Abbot v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, a civil conspiracy claim must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." *Durham v. City and Cnty. of Erie*, 171 Fed. App'x. 412, 415 (3d Cir. 2006). A plaintiff can meet this requirement when his complaint "sets forth a valid

legal theory and it adequately states the conduct, time, place, and persons responsible." *Lynn v. Christner*, 184 Fed. App'x. 180, 185 (3d Cir. 2006).

This Court dismissed Plaintiff's conspiracy claim in its prior opinion because "Plaintiff's Second Amended Complaint contains only a recitation of the elements of a conspiracy-related claim without reference to any supporting facts which would allow the Court to draw the reasonable inference that each of the Defendants in this action specifically engaged in the underlying unlawful acts by virtue of *an agreement*.   Plaintiff has failed to state a facially plausible claim of civil conspiracy because the Amended Complaint fails to contain, *inter alia*, facts establishing the existence of any type of agreement between the Defendants to inflict an injury on the Plaintiff."  Opinion, CM/ECF No. 26, at 20.  Plaintiff has done nothing to cure this deficiency.   His Second Amended Complaint contains no factual allegations to support an *agreement* between the parties to deceive Xechem about its ownership of Xechem India. Defendants' motion to dismiss Count Eleven is therefore granted; because this Court has already provided Plaintiff an opportunity to cure the deficiencies in his conspiracy claim, Count Eleven of the Amended Complaint is dismissed *with* prejudice.

## IV.   **CONCLUSION**

Based on the reasons set forth above, Defendants' motion to dismiss [CM/ECF No. 36] is granted in part and denied in part.  Insofar as Defendants moved to dismiss Counts Four and Seven, their motion is denied.  All remaining counts, with the exception of Count Twelve, are dismissed *with prejudice*.

An appropriate Order accompanies this Opinion.

_____

Jose L. Linares
United States District Judge

Dated: April 30th, 2013