**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

ROBERT SWIFT,

          Plaintiff,

          v.

RAMESH PANDEY, BHUWAN
PANDEY, XECHEM (INDIA) PVT.
LTD.,

          Defendants.

Case No. 2:13-cv-00650 (BRM) (JSA)

**AMENDED OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Robert Swift's ("Swift") Motion to Hold Defendants Ramesh Pandey ("Ramesh") and Bhuwan Pandey ("Bhuwan," collectively the "Pandey Defendants") in contempt of court. (ECF No. 536.) The time for the Pandey Defendants to respond has expired, and the Pandey Defendants have failed to file an opposition to Swift's motion or appear in any way before this Court since September 2022. (ECF No. 489.) In lieu of filing an opposition on behalf of their clients, the attorneys for the Defendants (the "Defense Counsel") filed two letters with the Court. The first letter was a response to Swift's Motion, which attested that "[d]espite [the] best efforts" of Defense Counsel, they "have not been able to get a response . . . from the Pandey Defendants" and there is nothing more they can do as attorneys for the Pandey Defendants to effectuate their compliance with the Enforcement Order. (ECF No. 538.) In the second, the Defense Counsel moved the Court to relieve them of their duty to represent the Pandey Defendants, citing the Pandey Defendants' failure to pay the attorneys and a breakdown in the attorney-client

relationship. (ECF No. 543.) As the factual record underlying both motions is substantively the same, the Court will consider these motions together.

Having reviewed and considered the submissions filed in connection with the motions, and for good cause shown, Swift's Motion to Hold the Pandey Defendants in Contempt of Court is **GRANTED** and Defense Counsel's Motion to Withdraw as Counsel for the Pandey Defendants is **GRANTED**.

## I.   BACKGROUND

The Court has set forth, at length, the factual and procedural background as it pertains to this action in its Opinions dated August 10, 2016, March 27, 2017, August 31, 2017, October 12, 2017, May 22, 2018, May 2, 2022, and November 28, 2023. (ECF Nos. 165, 197, 222, 229, 264, 444, 511, 514). The Court hereby incorporates the facts set forth therein and will only discuss the facts and procedure relevant to Swift's current motion.

On March 27, 2015, Swift filed his Third Amended Complaint, the operative complaint for the remainder of the lawsuit. (ECF No. 85.) This complaint set forth his prior claims of unjust enrichment alongside three new claims for quantum meruit. (*Id*.) The Pandey Defendants, on May 14, 2015, moved to dismiss the new quantum meruit claims, but Xechem India Pvt. Ltd. ("Xechem India") did not appear, as it hadn't for any of Swift's prior complaints. (ECF No. 87.) However, the Court denied the motion, reasoning that the quantum meruit claim was sufficiently tied to the initial complaint to avoid being time-barred. (ECF No. 93.) Swift proceeded to file a Motion for Default Judgment against Xechem India on February 24, 2016, as it had not responded to either the Second or Third Amended Complaints. (ECF No. 128.) On March 22, 2016, the Court denied the motion as Swift failed to prove he had properly served Xechem India. (ECF No. 137.)

In August 2022, this Court held a bench trial between the parties and facilitated settlement discussions between Swift and the Pandey Defendants. (ECF No. 473.) As a result of the negotiations, the parties came to a partial resolution of the dispute regarding the ownership of Xechem India. (ECF No. 497 (Trial Tr. Vol. II) at 220–21, 229–30; ECF No. 498 (Trial Tr. Vol. III) at 283–84; ECF No. 499 (Trial Tr. Vol. IV) at 291; ECF No. 500 (10/05/2022 Hr'g Tr.) at 2–5.) The Pandey Defendants, individually and through their counsel, represented they would: (1) transfer to Swift any and all rights and interests they have, and any assets that may exist, in Xechem India, and (2) cooperate with Swift to efficiently facilitate this transfer, including revitalizing or reestablishing Xechem India as a corporation in India, on the condition this process would be at no cost to the Pandey Defendants and that Swift would provide the Pandey Defendants the necessary paperwork. (ECF No. 497 at 220–21, 229–30; ECF No. 498 at 283–84; ECF No. 499 at 291; ECF No. 500 at 2–5.)

At the conclusion of the trial, the Court found in favor of the Pandey Defendants on the remaining unjust enrichment and quantum meruit claims but retained jurisdiction to enforce the settlement agreement. (ECF No. 499 at 292–301.) The Court then granted the Pandey Defendants' motion to dismiss all of Swift's remaining claims under Fed. R. Civ. P. 52(c). (ECF No. 499 at 292–301.) After a careful review of the record, the Court found Swift had failed to prove the elements of his remaining claims for unjust enrichment or quantum meruit against any defendant, including Xechem India. (*Id.*) Though the Court awarded final judgment in favor of the Pandey Defendants on all claims not subject to the settlement agreement, the Court explicitly retained jurisdiction over the settlement agreement between Swift and the Pandey Defendants in order to enforce the agreement. (ECF No. 497 at 229–30; ECF No. 498 at 283–84; ECF No. 500 at 5.)

On September 13, 2022, Swift filed a notice of appeal seeking to reverse the Court's decision. (ECF No. 483.) The Third Circuit upheld this Court's rulings, with a modification that claims against Xechem India were dismissed without prejudice for lack of jurisdiction. *Robert Swift v. Bhuwan Pandey, et al*, C.A. No. 22-2718 (Feb. 11, 2025) (Dkt. 31).

A year after the trial, while Swift's appeal remained pending, Swift once again moved the Court to enter a default judgment against Xechem India on June 30, 2023, and to enforce the agreement between himself and the Pandey Defendants on September 28, 2023. (ECF No. 482 (Swift Letter to Court Requesting Entry of Default); ECF No. 506 (Swift Motion for Default Judgment against Xechem India); ECF No. 507 (Swift Motion to Enforce Settlement).) The Court construed Swift's letter as a request to amend the judgment. (ECF No. 486 (Order in Response to Swift Default Judgment Letter) at 2.) The Court denied the motion for default judgment, holding Swift had failed to timely provide service of process to Xechem India. (ECF No. 514 at 19.)

However, when addressing the motion to enforce the settlement agreement, the Court found the parties had voluntarily entered into the settlement agreement, which would assign Xechem India to Swift. (ECF No. 511 at 9.) Further, the Court determined the Pandey Defendants had "not abided by the terms of the valid settlement agreement to which they agreed," and granted the motion to enforce. (*Id.* at 9.) Despite finding the Pandey Defendants had not abided by the terms of the settlement, the Court declined to hold the Pandey Defendants in contempt of court but issued a warning that the Court would "take any actions deemed necessary and permissible under the law if they do not promptly comply." (*Id.* at 10 n.4.)

Notwithstanding the Court's warning, since that time, the Pandey Defendants have persisted in their decision to defy the Court's judgment. (ECF No. 538 at 1.) Swift and counsel for the Pandey Defendants have both attested that despite the "best efforts" of the attorneys to get the

Pandey Defendants to comply, they have been met with complete silence. (ECF No. 536 at 3; ECF No. 538 at 1.)

## II.     LEGAL STANDARD

### A.     Civil Contempt

"Courts have inherent power to hold parties in civil contempt in order to enforce compliance with any order of the court or to compensate for losses or damages." *United States v. Ciampitti*, 669 F. Supp. 684, 687 (D.N.J. 1987) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). Additionally, the Court has the authority to impose sanctions "if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).

> Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2).

"To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citation omitted).

"The Third Circuit requires the plaintiff to present 'clear and convincing evidence' to satisfy its heavy burden of showing that a defendant is guilty of civil contempt." *Measuring & Monitoring Servs. v. Watt Busters, Inc.*, Civ. A. No. 03-4820, 2006 WL 1644857, at *3 (D.N.J. June 5, 2006) (quoting *Schauffler on behalf of NLRB v. Int'l Longshoremen's Ass'n.*, 292 F.2d 182, 189–90 (3d Cir. 1961)). "Clear and convincing evidence" is a stringent standard that requires evidence "so clear, direct and weighty and convincing as to enable the fact-finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue*." N.J. Sports Prods. v.*

*Don King Prods.*, 15 F. Supp. 2d 546, 551 (D.N.J. 1998) (quoting *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 285 n.11 (1990)). "Ambiguities in the order should be resolved in favor of the party charged with contempt." *Id.* (citing *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995)).

### B.      Withdraw as Counsel

Under Local Rule 102.1, "[u]nless other counsel has been substituted, no attorney may withdraw an appearance except by leave of Court." The decision to permit an attorney to withdraw "is entirely within the discretion of the court and a court may refuse to allow withdrawal despite a showing of good cause." *Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 422 (D.N.J. 1993).

Nevertheless, where good cause exists and absent extraordinary circumstances, the Court will grant leave. *See id.* at 426 (holding that withdrawal was not permitted despite good cause, where withdrawal would prevent the action from being litigated). The Court considers the following factors to determine whether an attorney may withdraw (1) "the reason withdrawal is sought," (2) "the prejudice withdrawal may cause to other litigants," (3) "the harm withdrawal may cause to the administration of justice," and (4) "the degree to which withdrawal may delay the resolution of the case." *U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 252–53 (D.N.J. 1997) (citing *In re Avant–Garde Computing, Inc. Sec. Litig.*, Civ. A. No. 85-4149, 1989 WL 103625 (D.N.J. Sept. 5 1989)).

The Court also considers the factors listed in the Rules of Professional Conduct ("RPC") when determining whether an attorney may withdraw. *See Singer Mgmt. Consultants v. Milgram*, Civ. A. No 07-3929, 2008 WL 11382034 (D.N.J. Feb. 14, 2008) (determining whether good cause exists under the RPC). Under RPC 1.16(b), an attorney may withdraw from a client when:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetuate a crime or fraud;

(4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause shown for withdrawal exists.

RPC 1.16; *see also Haines v. Liggett Group, Inc.*, 814 F. Supp. 414, 422 (D.N.J. 1993).

## III.    DECISION

### A.    The Pandey Defendants have failed to comply with this Court's Order and are in Contempt of Court.

After this case went to trial, the Court found in favor of the Pandey Defendants on all but a single issue—a settlement agreement under which they would transfer ownership and power of attorney of Xechem India. (ECF No. 497 at 220–21, 229–30; ECF No. 498 at 283–84; ECF No. 499 at 291; ECF No. 500 at 2–5.) Despite the limited nature of this settlement agreement, the Pandey Defendants made no effort to comply with the agreement into which they entered, requiring Swift to bring a Motion to Enforce the Settlement Agreement. (ECF No. 507.) Now, three years after the agreement was formed, Swift has still not received ownership of Xechem India. (ECF No. 536.)

This is not the first time Swift has needed to seek relief from the Court in an attempt to enforce the agreement. (ECF No. 507.) The Court ruled on Swift's Motion to Enforce the

Settlement Agreement and found "no genuine dispute of material fact exists related to this settlement agreement," and despite "Plaintiff's outreach to the Pandey Defendants and request for their cooperation via both mail and email over several months and Plaintiff's request for the Pandey Defendants' counsel to intervene[,] . . . the Pandey Defendants have not abided by the terms of the valid settlement agreement to which they agreed over a year ago." (ECF No. 511, at 5.) The Court therefore found "it necessary to intervene and enforce this settlement agreement," and issued the Enforcement Order, enforcing the settlement agreement. (*Id.*) There can therefore be no dispute that a "valid court order exist[s]," which the Pandey Defendants were bound to respect. *John T. ex rel. Paul T.*, 318 F.3d at 552.

Although Swift treats the Pandey Defendants as a unit jointly in violation of the Enforcement Order (ECF No. 536), it is apparent from Defense Counsel's production that this is an inaccurate summation of Bhuwan and Ramesh's respective conduct (ECF No. 538). Though Ramesh has fully refused to comply with the Enforcement Order, Bhuwan has made an attempt to comply. (ECF No. 538-1.) On September 29, 2024, Bhuwan provided his attorney a copy of a document purporting to transfer power of attorney to Swift—and messaging Ramesh. (*Id.* at 4–5.) Despite being signed nearly a year after the Court issued the Enforcement Order, the document was incomplete, having only been signed by Bhuwan and not Ramesh. (*Id.* at 2–3.)

This incomplete document is justifiably frustrating to Swift, having been unjustly stonewalled for years at this point. However, Swift's justifiable frustration does not make Bhuwan responsible for Ramesh's continued obstinacy. Bhuwan has, by all appearances, made an attempt to comply with the Enforcement Order, and there is no evidence or accusation that he is directing Ramesh's behavior. (*Id.* at 1–3.) Indeed, it appears Bhuwan took some minimal steps to facilitate

Ramesh's compliance with the Order.[1] (*Id.* at 4–5.) Swift argues Bhuwan remains non-compliant because he has not had the "original" power of attorney forms "stamped, and sen[t] . . . to Plaintiff." (ECF No. 536 at 3.) However, the Enforcement Order did not require these additional steps, nor did Swift demonstrate a specific need for them to effectuate the transfer. (ECF No. 511 at 5 (requiring the Pandey Defendants only to cooperate to "effectuate the prompt and efficient transfer" of rights to Xechem India).) In determining contempt, a court's order is construed strictly and all "ambiguities in the order should be resolved in favor of the party charged with contempt." *N.J. Sports Prods.*, 15 F. Supp. 2d at 551. Therefore, Swift's preferences for how the documents be stamped or returned to him cannot form the basis for a finding of contempt, unless Swift (1) demonstrates they are necessary to "effectuate" the transfer agreement (ECF No. 512 at 2), and (2) Bhuwan knew they were necessary when sending the documents.

Nevertheless, strict construction of the Order's plain language—requiring the Pandey Defendants to "effectuate the prompt and efficient transfer"—makes clear that a single, incomplete submission years after the fact does not satisfy that obligation. (ECF No. 512.) Therefore, Bhuwan Pandey has "violated a court order." *John T. ex rel. Paul T.*, 318 F.3d at 552. As part of the settlement agreement, Bhuwan Pandey (through counsel) was clear he was "not going to sit on [the document] for three days," but would "move it as efficiently and effectively as possible." (ECF No. 497 at Tr. 229:13–16.)

The Pandey Defendants have now sat on this obligation for over three *years*. (*Compare id.* (entering into the settlement agreement on August 10, 2022); *with* ECF No. 536 (filed August 31,

---

[1] Specifically, Bhuwan forwarded the signed transfer documents to Ramesh to effectuate the transfer. (ECF No. 538-1 at 4–5.) However, he did not follow up with his counsel to further ensure compliance. (*Id.*)

2025).) Bhuwan's submission of a single email containing a defective document to his attorney—a year after the Court ordered him to comply, and two years after he agreed to do so—falls well short of facilitating the Court's order to "effectuate the prompt and efficient transfer of any and all rights and interests they have." (ECF No. 512.) The transfer has yet to be effectuated and until it has, or until Bhuwan meaningfully cooperates with Swift's efforts to effectuate the transfer, he will remain in contempt.

Finally, there can be no disagreement the Pandey Defendants "had knowledge of the order" when they failed to comply. *Id.* For his part, Bhuwan Pandey has demonstrated his knowledge of the order by providing Swift with a defective transfer document. (ECF No. 538-1.) Bhuwan may have signed the document, but he took no further action to make sure the transfer document was effective and ignored attempts to inform him of the missing signature, placing him in contempt. (*Id.*) Although Ramesh has not personally acknowledged the Enforcement Order, he was present for the settlement discussions and agreed to transfer all rights and ownership of Xechem India to Swift. (ECF No. 496 at 10:21–11:18.) Defense Counsel and Bhuwan have reached out to facilitate this transfer on multiple occasions, only to be ignored. (ECF No. 538; ECF No. 538-1.) These communications, alongside Ramesh's active efforts to avoid engaging with Defense Counsel confirm Ramesh has "knowledge of the order sufficient to put him on notice of the proscribed conduct," and therefore Ramesh may also be held in contempt. *In re Odom*, 570 B.R. 718, 722 (Bankr. E.D. Pa. 2017) (citing *In re Wagner*, 74 B.R. 898 (Bankr. E.D. Pa. 1987)); *see also John T. ex rel. Paul T.,* 318 F.3d at 552.

For the foregoing reasons, Swift's Motion to Hold the Pandey Defendants in Contempt of Court is **GRANTED** with respect to both Bhuwan and Ramesh Pandey.

**B.      Sanctions for Contempt**

Having found the Pandey Defendants in contempt, the Court must assess the proper sanctions to compel compliance with the Enforcement Order. Under 18 U.S.C. § 401, "civil contempt sanctions, [are] penalties designed to compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience," they may "be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Swift requests the Pandey Defendants bear the burden of "all costs and expenses . . . related to Pandey's signing the POA" such as "the expense of obtaining an attestation stamp," and the estimated cost of travel from their homes in New Jersey to the Indian Consulate. (ECF No. 536 at 3.)

These penalties are reasonable and would serve to partially compensate Swift for the effort and expense he has exerted. But there is no mechanism to coerce future compliance. Therefore, the Court will order the Pandey Defendants to pay any and all costs Swift has incurred in the process of attempting to obtain their compliance, including any attorneys' fees incurred in the process of assessing the defective document transferring power of attorney.[2] (ECF No. 538-1 at 2.) Swift will have until May 15, 2026, to provide the Court with an itemized list of such expenses.

---

[2] Although Swift is *pro se* in this case, documents presented to the Court show Swift has engaged an attorney to assist in drafting and verifying the completeness of the agreement to transfer power of attorney. (ECF No. 538-1 at 2.)

The Pandey Defendants will also bear the burden of any additional expenses Swift incurs in trying to obtain their compliance.[3]

Further, the Court will levy an ongoing fee of $200 per day against both Ramesh and Bhuwan Pandey, until they have fully complied with the Enforcement Order, starting the day after this Opinion and accompanying Order issue. While the Pandey Defendants are over eighty years old, and the Court is therefore mindful of the potential for undue hardship, the record reflects they possess considerable assets. The Court finds that a daily sanction of $200 strikes the appropriate balance between incentivizing prompt compliance and avoiding substantial financial hardship.[4]

### C. Defense Counsel has shown good cause to withdraw, and there are no exceptional circumstances.

Swift and Defense Counsel share a common frustration, insofar as both have found it impossible to communicate with the Pandey Defendants. (ECF No. 536 at 1; ECF No. 543-1 (Declaration of Gene Martin Esq. In Support of Motion to Withdraw) ¶ 8.) However, Defense Counsel also has several complaints which are unique to their position as the representatives of the Pandey Defendants. (ECF No. 543-1 ¶¶ 5–12.) According to Defense Counsel, there has been a complete breakdown of communication with the Pandey Defendants, and the Pandey Defendants have refused to pay the mounting attorney's fees from Defense Counsel's representation since at least August 2022. (*Id.* ¶ 4.)

---

[3] Should either of the Pandey Defendants begin to comply before the other, they will be relieved of any further burden associated with obtaining the compliance of the other defendant. Having signed the necessary documents already, Bhuwan will be considered in compliance when Ramesh provides his signature, or he begins to actively communicate with Swift and the Court to secure Ramesh's compliance.

[4] For example, the Pandey Defendants have retained and compensated several attorneys throughout the duration of this matter.

Defense counsel demonstrates a breakdown of the relationship resulting from their clients' refusal to cooperate and communicate. (*Id.* ¶¶ 3–12.) At the beginning of their representation, the Pandey Defendants were responsive, cooperative, and prompt in compensating their attorneys. (*Id.* ¶¶ 3–4.) Though they remained responsive throughout the trial, over time they began to renege on some of their responsibilities as clients, particularly when it came to compensating their attorneys for their service. (*Id.* ¶¶ 4–7.) After the trial, communication with the Pandey Defendants became more strained, particularly when it came to the topics of the payment of arrears and compliance with the Settlement Agreement. (*Id.* ¶¶ 6–9.) Even on "substantive matters such as plaintiff's attempt to pursue an appeal" the Pandey Defendants stonewalled their attorneys. (*Id.* ¶ 8.) Consequently, Defense Counsel advised its clients they would be unable "to continue to represent their interests under these circumstances." (*Id.* ¶ 10.) Before filing this motion, Defense Counsel took steps to inform their clients "of [their] intention to seek to be relieved as counsel." (*Id.*) Regardless, the Pandey Defendants have not responded. (*Id.*)

Defense Counsel argues these facts provide a sufficient reason to permit them to withdraw as counsel, and the Court agrees. Together, a complete breakdown of attorney-client communications and non-payment of attorneys' fees are enough to permit an attorney to withdraw. *See, e.g., Dawson v. FedEx Freight, Inc.*, Civ. A. No. 22-01239, 2025 WL 2675814 (D.N.J. Sept. 18, 2025) (finding a "breakdown of communication" between the party and counsel was "good cause to permit . . . withdraw[l]"); *United States v. Parker*, 439 F.3d 81 (2d Cir. 2006) ("A client's refusal to pay attorney's fees may constitute 'good cause' to withdraw."). "Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *Parker*, 439 F.3d at 104 (quoting *In re Albert,* 277 B.R. 38, 50 (Bankr.S.D.N.Y.2002)). Here, Defense Counsel has set forth facts sufficient to show the Pandey

Defendants have not merely struggled to pay their bills, but have also "deliberately disregarded [their] financial obligations." *Id.* (quoting *McGuire v. Wilson,* 735 F.Supp. 83, 84 (S.D.N.Y. 1990)).

Furthermore, though Bhuwan Pandey eventually responded to Defense Counsel's attempts to get him to comply with the Enforcement Order, he did so last year, and there has been no further communication between him and counsel. (ECF No. 538-1 at 3.) To date, Ramesh Pandey has not replied to Defense Counsel's efforts to ensure compliance with the Enforcement Order. (ECF No. 538.) Therefore, the Court finds there has been a breakdown in the attorney-client relationship, and Defense Counsel has provided sufficient reason to be released from their responsibilities as counsel.

Where a client has chosen to ignore his or her own attorneys, there is minimal risk of prejudice to the client in permitting the attorneys to withdraw. *U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc.*, 994 F. Supp. at 252–53. Yet, the Court must still consider the potential prejudice to other litigants, namely Swift. *Id.* Here, the substantive issues of the case have been resolved, and the Court has retained jurisdiction only to execute the settlement agreement. (ECF No. 500 at 5.) Similarly, Defense Counsel retained a responsibility to "use his best efforts to facilitate" the transfer of Xechem India to Swift. (*Id.* at 3.) But there is no clear way for an attorney to facilitate a transfer from a client who has elected to ignore his or her attorney. The only role Defense Counsel appears to play at this juncture is as a potential point of contact between Swift and the Pandey Defendants. (ECF No. 538.) Therefore, permitting Defense Counsel to withdraw poses no risk of prejudice to Swift, provided Swift is given sufficient information to contact the Pandey Defendants.

14

The Court will consider the final two factors governing withdrawal together, namely, whether "withdrawal may cause [harm] to the administration of justice[,] and . . . the degree to which withdrawal may delay the resolution of the case." *U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc.*, 994 F. Supp. at 252–53. Trial has already been held and a final judgment rendered, therefore there is little risk that permitting Defense Counsel to withdraw would cause further delay. (ECF Nos. 499 and 500.) Regarding the proper administration of justice, there is some risk to the Pandey Defendants' own knowledge of this contempt finding, and the fees to which they are subject. However, it is unclear that Defense Counsel can do much more than provide notice on this front, given that the Pandey Defendants have already elected to ignore communications from their attorneys. As this Court has already found, so long as Defense Counsel provides Swift with the last-known contact information of their former clients, there is minimal risk of prejudice to other parties.

Defense Counsel's Motion to Withdraw is therefore **GRANTED**. Prior to the withdrawal becoming effective Defense Counsel shall: (1) provide written notice to the Pandey Defendants of the accompanying Order holding them in contempt, including the ongoing daily sanction, and (2) provide Swift with the last-known contact information of the Pandey Defendants. Defense Counsel shall have no further obligations to the Pandey Defendants or in this matter upon satisfaction of these conditions.[5]

---

[5] These conditions are imposed subject to a district court's "broad discretion" in how to dispose of "matters of docket control." *Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC*, Civ. A. No. 16-4032, 2020 WL 1493013, at *2 (D.N.J. Mar. 27, 2020).

## IV.    CONCLUSION

For the reasons set forth above, Swift's Motion for Sanctions Against the Pandey Defendants (ECF No. 536) is **GRANTED**, and Defense Counsel's Motion to Withdraw (ECF No. 543) is **GRANTED**. An appropriate order follows.


**Date: April 15th, 2026**                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**